## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

IN RE:

**Ch. 7**

**POWER HOME SOLAR, LLC,**
                **Debtor**

**Case No. 22-50228**

_____

**CLAUDE MUMPOWER,**
**HERMAN BLAND,**
**SYLVIA BLAND,**
**JACOB GREEN,**
**EMILY YEATTS,**
**MARC VREDENBURG,**
**SHON JUALIN,**
**AMBER JUALIN,**
**DUSTIN FONTENOT**
**RICHARD MONTERIA,**
**NIRMAL SAKTHI,**
**LOGAN SCHALK,**
**KIM L. LARSEN,**
**SCOTT LARSEN,**
**JASON SCHIEBER,**
**DAMIEN SINK,**
**ERIC MEDLIN,**
**HEATHER WILSON MEDLIN,**
**GEORGE W. HARRIS, III**
**MOHAMED ABDALLA,**
**REAGAN ATKINS,**
**BRIAN BAUMGARDNER,**
**SAMANTHA BOWYER,**
**PAUL CAMPBELL III,**
**TERESA CICCONE,**
**MICHAEL CRAIGHEAD,**
**JAMES CROWDER,**
**JOSHUA DICKEY,**
**ROBERT DUNCAN,**
**MICHAEL DUNFORD,**
**DOMINIC DURING,**
**GLEN ERWIN,**
**ANTHONY FUCCI,**
**MELISSA GRUBE,**

**RICHARD HARRELL,**
**DENISE HENDERSON,**
**PHILIP JOINER,**
**DUMONT JONES,**
**JEANETTE JONES,**
**KAMI JORDY,**
**MARC KENNEDY,**
**JOSHUA LAPLANTE,**
**STEPHANIE LAPLANTE,**
**CARRIE LEE,**
**HOWARD LOHNES,**
**NORMA LOHNES,**
**ELIZABETH MANK,**
**WENDY MINOR,**
**JOESIL MOORE,**
**DEBRA ORR,**
**EDWIN PINTO - CASTILLO,**
**CATHERINE PISTONE,**
**RICK PISTONE,**
**JEFFREY PREUSS,**
**ERIN RAY,**
**WESLEY RICHIE,**
**TRACEY RICHIE,**
**KATHY ROBERSON,**
**DANIEL ROBERTS,**
**PAMELA SEIFERT,**
**ASHLEY SHELLEY,**
**KELLY TENORIO,**
**LASHANDA THEODORE,**
**WILSON THEODORE,**
**ANTHONY WARD,**
**JERRY WATSON,**
**JESSE WEAVER,**
**KRISTEN WHITE,**
**NINA BRIGGS,**
**MARGARET FLESHMAN,**
**ANGELA MORRIS,**
**JOHN MORRIS,**
**CARL STEINHART,**
**CHRISTIAN STRATTON,**
**ASHLEY SUSTEK,**
**MATT SUSTEK,**
**CHELSEA VANDEN-BERG,**
**JACOB VANDEN-BERG,**
**ERIC C. MICHAUX,**
**STACEY BATTLE,**
**LESLEY JACKSON,**

**DANIEL JACKSON,**
**JAMES MACKEY,**
**SONDRA MACKEY,**
**VICHITTRA PRASONGPHIME,**
**SILBERIO REYES, and**
**STEVE HOLLINGSHEAD**

**for themselves**
**and on behalf of others similarly situated,**

       **Plaintiffs,**

**v.**                                                     **Adv. Pro.  No:**

**POWER HOME SOLAR, LLC,**
**JAYSON WALLER,**
**SUNLIGHT FINANCIAL LLC,**
**DIVIDEND SOLAR FINANCE, LLC,**
**GOODLEAP, LLC,**
**SOLAR MOSAIC, INC.,**
**CROSS RIVER BANK,**
**TECHNOLOGY CREDIT UNION,**
**DIGITAL FEDERAL CREDIT UNION,**
**ADDITION FINANCIAL CREDIT UNION,**
**SLST UNDERLYING TRUST 2020-1, and**
**DOES 1-10.**
             **Defendants.**

## ADVERSARY CLASS ACTION COMPLAINT

### INTRODUCTION

1.     This lawsuit seeks remedies for consumers who have been victimized by the Defendants' fraudulent scheme to induce consumers to purchase over-promised and under-performing solar panels for their homes at secretly inflated prices, using a classic "bait and switch" scam consisting of a sales pitch that includes guarantees that the consumers will receive a substantial federal income tax credit for purchasers of solar panels in the form of a payment that would be received promptly after signing up, even though Defendants knew that the credit is not guaranteed in many instances. Even when the tax credit is applicable, it is still only a credit - in

the form of an income tax reduction at tax time - i.e. the consumer never gets a tax rebate check from the government, despite being explicitly promised one by Defendants. Accordingly, Plaintiffs file this lawsuit as a proposed class action to remedy the wrongs committed by the Defendants, the debtor Power Home Solar, LLC (Power Home) and the financial entities that Power Home used, to sell solar panel systems to customers throughout Virginia, North Carolina, and other states.

2.      The named Plaintiffs in this action are all residents of Virginia or North Carolina who signed separate contracts with Power Home for the installation of the solar panel system and credit contracts with the financial-entity defendants that financed the consumer's purchase of the solar panel system from Power Home. The same salesperson arranged both contracts, which were usually negotiated and executed in the consumer's home. All the credit contracts require that any holder of the credit contract be liable for all claims and defenses the consumer has against Power Home, such that any claim the consumer has against Power Home is also a claim that can be raised against the finance entity Defendants, which themselves are also creditors of Power Home in its (above captioned) bankruptcy case.

3.      Because of this derivative liability, each individual consumer's claim is then aggregated within the claim of the creditor/defendant finance entity that is the holder of that consumer's credit contract, along with all the Power Home victims with credit contracts held by that same financial entity. Based on indemnity agreements and other legal theories, each financial entity's derivative liability then determines the amount of that financial entity's claim against the Debtor. Additionally, to the extent that each Plaintiff recovers their damages for a derivative liability claim from their respective financial entity, this reduces such Plaintiff's claim against the Debtor.

4.      The Plaintiffs propose a class action where they all have claims against Power Home as the class, and then are grouped in subclasses for each financial entity Defendant. The

Plaintiffs seek one adjudication of the common questions of law and fact. Those legal determinations will then create the framework for establishing the respective amounts of the individual claims against the Debtor.

5.     Each individual financial-entity defendant had its own contractual relationship, directly or indirectly, with Power Home. The core similarity is that the same Power Home employee who negotiated the sale of the solar power system also arranged the credit contract. By wearing these two hats, that representative was an agent for Power Home and an agent for the financial entity.

6.     Further, based on the contracts between Power Home and the various financial-entity defendants, the purported face amount of the direct loan, which the financial entities' loan documents explicitly represent is a loan exclusively to be paid to Power Home for the cost of the design, installation, and equipment for the solar power system, was not the true amount of the loan. Instead, based on separate contracts between Power Home and the various financial-entity defendants, the cash price for each financed installation was inflated to include an undisclosed fee charged by the financial-entity defendants, who actually paid less to Power Home for the design, installation, and equipment than the amount of the loan proceeds. Because the person who was negotiating the alleged "price" of the Power Home system was also arranging the credit contract on behalf of the financial entity/lender, the unlawfully inflated price being charged on the Power Home contracts was a function of the credit-granting process of the financial entity making the loan.

7.     Consequently, the financial-entity defendants were directly involved in the credit-granting process, and they therefore are also directly liable for the actions of their agent. Because actual damages may only be recovered once, recovery of damages for that direct liability, which cover the same damages as a claim against Power Home, may also reduce the amount of the

Plaintiffs' claims against Power Home, potentially leaving more resources available for the bankruptcy estate, which may improve the potential recovery available to Power Home's non-consumer creditors.

8.      The claims include violation of the federal Racketeer Influenced and Corrupt Organizations Act (RICO), violation of the Virginia Consumer Protection Act (VCPA), violation of the North Carolina Unfair and Deceptive Trade Practices Act (UDTPA), fraud, and violation of the federal Truth in Lending Act (TILA).

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 151, 157(b), and 1334, 11 U.S.C. § 105 and 501, and Federal Rules of Bankruptcy Procedure 7023, in that this action arises in and relates to the Chapter 7 bankruptcy case of Power Home, 18 U.S.C. § 1964(c), and raises claims against that debtor and other entities with interests in this bankruptcy.

10.     This proceeding is a core proceeding under 28 U.S.C. §157(b)(2)(A), (B), and (O). Congress delegated to the bankruptcy courts, as judicial officers of the district courts, adjudicatory authority, subject to the district courts' supervision as particularized in § 157 and the limits imposed by the Constitution. To the extent that the Court finds any of Plaintiffs' claims are non-core claims, Plaintiffs consent to entry of final judgment by this Court on all claims presented in this matter.  To the extent any other party does not also consent to the entry of final judgment by this Court, Plaintiffs consent to this Court's entry of a report and recommendation to the District Court.

11.      Venue is proper in this district because the primary actor linking all the parties together is Power Home, the debtor in bankruptcy.

12.     Each member of the proposed class also suffered concrete harm because they did not receive what they were promised by Power Home. Depending on the person, these harms

6

included being overcharged for their system, being charged more for their actual loan than as set forth in the credit contracts, not receiving the system they were orally promised, not receiving the reduction in their overall electric costs each month that they were promised, not receiving the tax credit they were promised, not receiving the system described in their contract, not having their system properly installed and put in proper functioning order, and not receiving the benefit of the promised Power Home warranty.

**PARTIES**

13.    The Plaintiffs are all natural people who reside in Virginia and North Carolina who signed contracts with Defendant Power Home for the installation of a photovoltaic solar power system at their residence.

14.    Defendant Power Home is the debtor who has filed a Ch. 7 bankruptcy. Prior to filing bankruptcy, it adopted "Pink Energy" as the name in which it did business.

15.    Defendant Jayson Waller (Waller) was the founder and Chief Executive Officer of Power Home.

16.    Defendant Dividend Solar Finance, LLC (Dividend) is a financial institution who extended credit to one or more of the named Plaintiffs for the purchase of a solar power system from Power Home.

17.    Defendant Cross River Bank (Cross River) is a financial institution who extended credit to one or more of the named Plaintiffs for the purchase of a solar power system from Power Home.

18.    Defendant Technology Credit Union (Tech CU) is a state chartered financial institution who extended credit to one or more of the named Plaintiffs for the purchase of a solar power system from Power Home.

19.     Defendant Solar Mosaic, Inc. (Mosaic) is a financial institution who extended credit to one or more of the named Plaintiffs for the purchase of a solar power system from Power Home. Solar Mosaic also worked with other institutions to arrange for the other institution to extend credit to one or more of the named Plaintiffs for the purchase of a solar power system from Power Home.

20.     Defendant GoodLeap LLC, formerly known as Loanpal, (GoodLeap) is a California limited liability company and a financial institution who extended credit to one or more of the named Plaintiffs for the purchase of a solar power system from Power Home.

21.     Defendant Sunlight Financial LLC (Sunlight) is a Delaware limited liability company and a financial institution who worked with other institutions, like Cross River and Tech CU, to arrange for the other institution to extend credit to one or more of the named Plaintiffs for the purchase of a solar power system from Power Home.

22.     Defendant Digital Federal Credit Union (Digital) is a state chartered financial institution who extended credit to one or more of the named Plaintiffs for the purchase of a solar power system from Power Home.

23.     Defendant Addition Financial Credit Union (Addition) is a state chartered financial institution who extended credit to one or more of the named Plaintiffs for the purchase of a solar power system from Power Home.

24.     Defendant SLST UNDERLYING TRUST 2020-1 (SLST Trust) is a securitization trust that has bought one or more of the credit contracts that were created by the other financial institutions to extend credit to one or more of the named Plaintiffs for the purchase of a solar power system from Power Home.

25.     Defendants DOES 1 through 10 are any other financial institutions that purchased one or more of the credit contracts that were created by the other financial institutions to extend

credit to one or more of the named Plaintiffs for the purchase of a solar power system from Power
Home.

## FACTUAL ALLEGATIONS

26.    At all pertinent times, Waller controlled Power Home's practices and was
intimately familiar with its practices, procedures, and standard contracts.

27.    Waller and Power Home authorized and ratified the wrongful conduct that harmed
the named Plaintiffs.

28.    At the direction of Waller, Power Home established contracts with the financial-
entity defendants for those entities to work with Power Home to sell and finance residential solar
power systems that produced electricity. Every financed deal has two contracts - an installation
agreement with Power Home and a credit contract directly with the lender. The same salesperson
presents both and uses one program on an Ipad that does all the calculations and determines the
price. Power Home's contracts with the financial-entity defendants included a hidden fee that the
financial-entity defendants included in and retained from each loan to Power Home's consumer
customers.

29.    The consequence of the hidden fee was that the financial-entity defendants
knowingly made loans to borrowers that were secretly inflated by amounts the financial-entity
defendants kept for themselves, even as the financial-entity defendants' loan agreements and other
disclosures represented to the consumer that the principal of the loans was to be used exclusively
to pay for the design, installation, and solar power generation equipment that the consumer was
purchasing from Power Home.

30.    At the direction of Waller, Power Home established a standard sales pitch to be
used when these systems and the related financing were sold to consumers.

31.     The standard sales pitch misled consumers about the efficiency and effectiveness of the system being sold to them, misrepresented the federal solar tax credit as a guaranteed rebate that would come back to the consumer in one lump sum, and misrepresented the amount of the dollar benefit to the consumer.

32.     Regarding the federal solar tax credit, at the direction of Jayson Waller, Power Home did not train its agents to tell consumers about how to go about determining the availability, amount, and timing of the promised federal tax credit on their own, nor were the agents trained on how to properly determine whether and by how much a potential customer might benefit from the federal tax credit and when that benefit might come in. To determine the amount of the tax credit, an agent would need enough information to complete IRS Form 5695.

33.     To estimate how much and when any person might benefit from the federal tax credit, an agent could ask to see the person's tax return from the previous year, and then ask whether that person expected any changes in their income or expenses. With that information, a properly trained sales agent could then evaluate whether the person could expect to initially owe federal taxes by using the instructions for the federal tax credit provided by the federal government. For tax year 2021, these are found at www.irs.gov/pub/irs-pdf/i5695.pdf.

34.     As explained in the "Homeowners' Guide to the Federal Tax Credit for Solar Photovoltaics" the important aspect is that this credit is a dollar-for-dollar reduction in the amount of income tax otherwise owed for the calendar year in which the system is placed in service. See https://www.energy.gov/sites/default/files/2021/02/f82/Guide%20to%20Federal%20Tax%20Credit%20for%20Residential%20Solar%20PV%20-%202021.pdf. Consequently, the amount of credit available to any person in the next calendar year is a function of the amount of federal income tax that they would be estimated to owe at the end of the tax year.

35.     Thus, in addition to refraining from misleadingly calling the tax credit a "rebate," the only truthful ways for Defendants' sales agents to discuss the solar tax credit to any potential customer would be to either explain and encourage consumers to independently determine the availability and amount of the solar tax credit before signing up or to actually assist the consumer in determining the availability and amount of the solar tax credit by asking sufficient questions and looking at sufficient documents to make a reasonable estimate of the amount of federal income taxes that would be owed by that person at the end of the calendar year.

36.     Defendants' sales agents were not trained to make these estimates, nor were they trained to advise consumers about the need to make or obtain estimates of their own before entering into the installation and financing agreements with the Defendants.

37.     Waller, Power Home, and the financial entity defendants knew that these estimates were not being made, and they knew their sales agents were telling consumers to evaluate the proposed contractual terms for the installation and finance agreements by taking the amount of the promised federal income tax "rebate" into account.

38.     Instead of assisting or encouraging consumers to make a reasonable estimate of the available tax credit, Defendants' sales agents were trained to present the full potentially available tax credit as a rebate that the customer would necessarily receive all at one time, as a cash payment rather than a reduction in tax owed.

39.     The Defendants' sales agents would present this idea even to people who would not receive any tax credit at all, such as people on disability.

40.     For the benefit of the financial-entity defendants involved in the credit contract, the Power Home agent would also discuss the monthly payment that would be required to pay the loan as if the full amount of the tax credit would be available to the consumer the following year.

41.    Because the Defendants' sales agents never made any reasonable estimate of the consumers' potential tax liability, the Defendants knew their sales agents could not estimate any consumer's actual tax credit.

42.    Consequently, these agents never should have discussed the amount of any tax credit available to any consumer.

43.     In addition, when the systems were to be financed, Power Home increased the cost of the system far higher than if the consumer were to pay cash, and sold these systems at inflated prices beyond the reasonable price of such systems.

44.    The reasonable price for a residential solar power system can be determined by the information published by the National Renewable Energy Laboratory, a branch of the U.S. Department of Energy.

45.    One reason the systems were sold at inflated prices beyond their true cash prices was because Defendants agreed that Power Home would not receive the full amount of the loan set forth in the credit contract. Although those loans purported to be for the exclusive purpose of paying the costs of the design, installation, and equipment required for the consumers' solar power systems, the financial entities would retain the difference between the loan amount and the amount paid to Power Home for the solar power system as a hidden fee.

46.    Because the Power Home sales agent arranged both the installation contract with Power Home and the credit contract with the finance entities for the consumers, the purported cash price of the system was determined in part by the credit granting protocols of the financial-entity defendants and their secret agreement with Power Home regarding the hidden fee that the financial-entity defendants retained from the principal amount of the loan to the consumer purportedly for the cost of the solar installation contract.

47.     That the Defendants' sales agent would regularly misrepresent the benefits of the system they were selling has been confirmed numerous times, including in the reporting at https://www.fox2detroit.com/news/powerhome-solar-shady-pitch          and          also          at https://www.fox5atlanta.com/news/hidden-cameras-reveal-dark-side-of-solar-power.

48.     All of the named Plaintiffs and the class they seek to represent were subjected to one or more of Defendants' deceptive sales practices.

49.     All of the named Plaintiffs and the class they seek to represent signed a contract with Power Home after hearing Defendants' agent's deceptive and misleading sales pitch.

50.     None of the Plaintiffs were told that the price of the system had been increased because of the hidden fee being retained by the financial-entity defendant that was working with Power Home.

51.     None of the Plaintiffs had the federal tax credit program properly explained to them.

52.     All of the named Plaintiffs and the class they seek to represent were harmed by their agreement to sign the Power Home contract after hearing the sales pitch.

53.     Without the involvement of the financial-entity defendants who were both willing to work with Power Home to sell solar installations, and also willing to let the Power Home agent work as their agent in arranging a credit contract for those installations, Power Home could not have conducted business in this manner.

54.     Attached as Exhibit 1 are Declarations that explain how each of the Defendants harmed at least one of the named Plaintiffs.

55.     Financial entities like Dividend, Mosaic, and GoodLeap are not depository institutions, and each extended credit in Power Home sales.

56.     Cross River and Tech CU are both state chartered credit unions, and Digital and Addition are both federally chartered credit unions; all have federally insured savings accounts.

13

57.     Sunlight worked as an arranger of credit that was extended in the name of either

Cross River or Tech CU.

58.     In some of transactions, rather than the entity who extended credit, Mosaic worked

as an arranger of credit that was extended in the name of one of its partners, such as Digital.

59.     The following named Plaintiffs' transactions do not include a signed credit contract

with any of the financial-entity defendants:

Jacob Green
Emily Yeatts

60.     The following named Plaintiffs signed credit contracts with Dividend:

Jesse Weaver
Reagan Atkins
Michael Dunford
Dominic During
Carrie Lee
Mohamed Abdalla
Jeffrey Rickard
Nina Briggs
Eric Michaux

61.     The following named Plaintiffs signed credit contracts with GoodLeap:

Claude Mumpower
Marc Vrendenburg
Shon Jualin
Amber Jualin
Dustin Fontenot
Nirmal Sakthi
Samantha Bowyer
Antwain Carey
Trisha Carey
Robert Duncan
Melissa Grube
Howard Lohnes
Norma Lohnes
Wendy Minor
Joesil Moore
Edwin Pinto-Castillo
Catherine Pistone
Rick Pistone

Jeffrey Preuss
Tracey Richie
Wesley Richie
Paul Campbell III
James Crowder
Glen Erwin
Joshua Laplante
Stephanie LaPlante
Kelly Tenorio
Debra Orr
Kristen White
Angela Morris
John Morris
Christian Stratton
George W. Harris, III
Chelsea Vanden-Berg
Jacob Vanden-Berg
Stacey Battle
James Mackey
Sondra Mackey
Silberio Reyes
Steve Hollingshead

62.     The following named Plaintiffs signed credit contracts with Mosaic:

Herman Bland
Sylvia Bland
Brian Baumgardner
Jason Schieber
Denise Henderson
Philip Joiner

63.     The following named Plaintiffs signed credit contracts with Cross River:

Kim L. Larsen
Scott Larsen
Joshua Dickey
Margaret Fleshman
Kathy Roberson
Carl Steinhart
Lashanda Theodore
Wilson Theodore

64.     The following named Plaintiffs signed credit contracts with Tech CU:

Heather Wilson Medlin
Elizabeth Mank
Dumont Jones
Jeanette Jones
Kami Jordy
Ashley Shelley
Anthony Ward
Daniel Roberts
Anthony Fucci
Teresa Ciccone
Michael Craighead
Jerry Watson
Erin Ray
Marc Kennedy
Vichittra Prasongphime
Ashley Sustek
Matt Sustek
Richard Harrell


65.     The following named Plaintiffs signed credit contracts with Addition:

Lesley Jackson
Daniel Jackson


66.     The following named Plaintiffs signed credit contracts that were arranged by

Sunlight:

Lesley Jackson
Daniel Jackson
Kim L. Larsen
Scott Larsen
Joshua Dickey
Margaret Fleshman
Kathy Roberson
Carl Steinhart
Lashanda Theodore
Wilson Theodore
Elizabeth Mank
Heather Wilson Medlin
Dumont Jones
Jeanette Jones
Kami Jordy
Ashley Shelley
Anthony Ward

Daniel Roberts
Anthony Fucci
Teresa Ciccone
Michael Craighead
Jerry Watson
Erin Ray
Marc Kennedy
Vichittra Prasongphime
Ashley Sustek
Matt Sustek
Richard Harrell

67.     The following named Plaintiffs signed credit contracts with Digital:

Richard Monteria
Pamela Seifert
Paul Campbell

68.     The following named Plaintiff knows that his signed credit contracts were arranged

by Mosaic:

Paul Campbell, III

69.     Kim L. Larsen and Scott Larsen and Carl Steinhart had their loans eventually sold

to the SLST Trust that is the current holder of these loans and subject to all claims and defenses

they have against Power Home.

70.     Because all the Power Home sales were induced through violations of law, each

named Plaintiff and the class they seek to represent are entitled, if they want, to cancel all the

contracts, have the system removed from their property, and have their property replaced to the

condition it was in before the installation of the solar power system.

71.     To the extent that any of the Power Home victims choose to keep their system at

its current level of functionality, then, in addition to other damages to which they are entitled, the

value of the benefit received can be easily computed by measuring the current productivity of the

system and applying the average price for a system of the effectiveness from the information

provided by the National Renewable Energy Laboratory, a branch of the U.S. Department of Energy.

72.     In this way, once the Bankruptcy Court rules on the legal issues, and assuming it finds that the contracts were created after the misrepresentations and frauds as alleged, at the victims' option, all the installation contracts and corresponding credit contracts are either to be cancelled and all payments returned, or all the payments that have been made are to be applied to the reasonable value of the system that has been installed.

73.     Additionally, all Plaintiffs and the class they seek to represent should be entitled to recover other actual damages, statutory damages, and punitive damages. They are also entitled to recover reasonable attorneys' fees.

## CLASS ALLEGATIONS

74.     Pursuant to Rule 23 of the Federal Rules of Civil procedure made applicable in this Adversary Proceeding under the bankruptcy rules, Plaintiffs bring this action for themselves and on behalf of a class (Power Home Class) initially defined as follows:

> All residents of Virginia and North Carolina who signed a contract with Power Home for the installation of a photovoltaic solar power system at their residence within four years of the filing of this Complaint.

75.     The Power Home class also has several subclasses.

76.     One subclass is the people whose project never advanced to the stage of having any credit contract signed with any financial entity (No Loan Class), and that subclass is defined as follows:

> All members of the Power Home Class who never signed a credit contract for the Power Home system.

77.     One subclass is the people whose project included a signed credit contract with Dividend (Dividend Class), and that subclass is defined as follows:

> All members of the Power Home Class who signed a credit contract with Dividend for the Power Home system.

78.     One subclass is the people whose project included a signed credit contract with Mosaic (Mosaic Class), and that subclass is defined as follows:

> All members of the Power Home Class who signed a credit contract with Mosaic for the Power Home system or for whom Mosaic arranged a credit contract for such a system.

79.     One subclass is the people whose project included a signed credit contract with GoodLeap (GoodLeap Class), and that subclass is defined as follows:

> All members of the Power Home Class who signed a credit contract with GoodLeap for the Power Home system.

80.     One subclass is the people whose project included a signed credit contract with Cross River, (Cross River Class) and that subclass is defined as follows:

> All members of the Power Home Class who signed a credit contract with Cross River for the Power Home system.

81.     One subclass is the people whose project included a signed credit contract with Tech CU (Tech CU Class), and that subclass is defined as follows:

> All members of the Power Home Class who signed a credit contract with Tech CU for the Power Home system.

82.     One subclass is the people whose project included a signed credit contract with Addition (Addition Class), and that subclass is defined as follows:

> All members of the Power Home Class who signed a credit contract with Addition for the Power Home system

83.     One subclass is the people whose credit contract was arranged by Sunlight (Sunlight Class) whether or not Sunlight was the actual initial creditor under that contract, and that subclass is defined as follows:

> All members of the Power Home Class who signed a credit contract for the Power Home system where Sunlight arranged the credit contract.

19

84.     One subclass is the people whose project included a signed credit contract with Digital (Digital Class), and that subclass is defined as follows:

> All members of the Power Home Class who signed a credit contract with Digital for the Power Home system.

85.     One subclass is the people whose credit contract was sold to SLST Trust (SLST Trust Class) regardless of who the initial creditor was under that contract, and that subclass is defined as follows:

> All members of the Power Home Class whose credit contract for the Power Home system was sold to SLST Trust.

86.     Once other assignees of the credit contracts at issue are identified, appropriate subclasses can be added for those assignees.

87.     <u>Numerosity</u>. Fed. R. Civ. P. 23(a)(1). For the Power Home Class and all subclasses, the class members are so numerous that the joinder of all is impractical. The names and addresses of these class members are identifiable through the internal business records maintained by Defendants, and the class members may be notified of the pendency of this action by published and/or mailed notice and/or electronic notice.

88.     <u>Common Questions of Law and Fact</u>. Fed. R. Civ. P. 23(a)(2). Common questions of law and fact exist as to all members of the putative main class and for each subclass. The principal issues include the following:

A.  Whether Waller authorized and ratified the wrongful conduct of Power Homes' agents.

B.  The value of the derivative claims against each financial entity that they must bear because the credit contract makes any holder of the credit contract liable for all claims the consumer has against Power Home.

20

C.  Whether the financial-entity defendants who used the Power Home agent to negotiate credit contracts for them are liable for the misrepresentations by that agent about the transaction.

D.  Whether Power Home's standard sales pitch misrepresented the efficiency and effectiveness of the system that any consumer would receive.

E.  Whether Power Home's agents were ever trained in how to provide a reasonable estimate of the anticipated federal tax credit that could be made available to each consumer if they purchased any solar power system from Power Home.

F.  Whether Power Home's agents ever asked any consumer for the information necessary to provide a reasonable estimate of the anticipated federal tax credit that could be made available to each consumer if they purchased any solar power system from Power Home.

G.  Whether Power Home's contracts with the financial-entity defendants included a hidden fee such that the full amount of the disclosed principal of the loan was not paid to Power Home.

H.  Whether the credit contracts for solar power systems that stated a principal amount that was greater than the amount paid to Power Home was a material misrepresentation.

I.  Whether the failure to disclose the hidden fee retained by a financial entity such that the full amount of the disclosed principal was not paid to Power Home shows actual fraud.

J.  Whether the named Plaintiffs and the class they seek to represent have been denied the benefit of the Power Home warranty by Power Home's bankruptcy.

K.  Whether Defendants' conduct show a pattern of racketeering activity.

L.  Whether Defendants' conduct violated RICO.

M.  Whether Power Home and the financial-entity defendants other than Tech CU, Cross River and Digital violated the VCPA.

N.  Whether Power Home and the financial-entity defendants violated the UDTPA.

O.  Whether each named Plaintiff and each similarly situated person is entitled to choose whether to cancel all their contracts regarding their Power Home system.

P.  The proper remedy under applicable law for Defendants' conduct, including how to apportion any cap on punitive damages.

89.  <u>Typicality</u>. Fed. R. Civ. P. 23(a)(3). For the Power Home Class and all subclasses, the Plaintiffs' claims are typical of the claims of each putative class member. In addition, Plaintiffs are entitled to relief under the same causes of action as the other members of the putative main class and respective subclasses. For each of these, Plaintiffs' claims are based on the same facts and legal theories applicable to each putative class member.

90.  <u>Adequacy of Representation</u>. Fed. R. Civ. P. 23(a)(4). Plaintiffs are adequate representatives of the putative main class and respective subclasses because their interests coincide with, and are not antagonistic to, the interests of the members of the main class and subclass each seeks to represent; each has retained counsel competent and experienced in such litigation; and each has and intends to continue to prosecute the action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the main class and each subclass. None of the Plaintiffs nor counsel have any interests which might cause them not to vigorously pursue this action.

91.  <u>Injunctive and Declaratory Relief</u>. Fed. R. Civ. P. 23(b)(2). The Defendants have acted generally towards the class and each subclass such that final injunctive and corresponding declaratory relief is appropriate regarding the class and each subclass as a whole. In particular, all the contracts should be declared to have been created in violation of law such that each Plaintiff and similarly situated person is entitled to choose whether to cancel the transaction entirely or

whether to keep the system in its current state and pay a reasonable value of the benefit being received.

92.    <u>Predominance and Superiority</u>. Fed. R. Civ. P. 23(b)(3). Questions of law and fact common to the main class and each subclass predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. In addition to the declaratory and injunctive relief, the damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for all members of the main class and for each subclass to individually and effectively redress the wrongs done to them. Even if the members of the main class or any subclass could afford such individual litigation, it would be an unnecessary burden on this Court. Furthermore, individualized litigation, whether in this Court or some other forum, presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in one case. This will effectively determine the value of the claim of each consumer against the Debtor, provide appropriate relief to each such victim, and allow for a proper valuation of the respective claims of each of the financial-entity defendants against the Debtor.

## CLAIMS

### Count One

### RICO- All Defendants

93.    On behalf of the Power Home Class, all Named Plaintiffs bring a RICO action against Power Home and Waller for violations of 18 U.S.C. § 1962(a).

94.     On behalf of the Dividend Class, the Plaintiffs named in Paragraph 60 above bring a RICO action against Dividend for violations of 18 U.S.C. § 1962©, and Dividend is also liable pursuant to the terms of the credit contract for the liability under the RICO action against Power Home.

95.     On behalf of the GoodLeap Class, the Plaintiffs named in Paragraph 61 above bring a RICO action against GoodLeap for violations of 18 U.S.C. § 1962(c), and GoodLeap is also liable pursuant to the terms of the credit contract for the liability under the RICO action against Power Home.

96.     On behalf of the Mosaic Class, the Plaintiffs named in Paragraph 62 and Paragraph 68 above bring a RICO action against Mosaic for violations of 18 U.S.C. § 1962(c), and Mosaic is also liable pursuant to the terms of the credit contract for the liability under the RICO action against Power Home for any credit contract it ever held.

97.     On behalf of the Cross River Class, the Plaintiffs named in Paragraph 63 above bring a RICO action against Cross River for violations of 18 U.S.C. § 1962(c), and Cross River is also liable pursuant to the terms of the credit contract for the liability under the RICO action against Power Home.

98.     On behalf of the Tech CU Class, the Plaintiffs named in Paragraph 64 above bring a RICO action against Tech CU for violations of 18 U.S.C. § 1962(c), and Tech CU is also liable pursuant to the terms of the credit contract for the liability under the RICO action against Power Home.

99.     On behalf of the Sunlight Class, the Plaintiffs named in Paragraph 66 above bring a RICO action against Sunlight for violations of 18 U.S.C. § 1962(c), and Sunlight is also liable pursuant to the terms of the credit contract for the liability under the RICO action against Power Home for any credit contract it ever held.

100.    On behalf of the Digital Class, the Plaintiffs named in Paragraph 67 above bring a RICO action against RICO for violations of 18 U.S.C. § 1962(c), and Digital is also liable pursuant to the terms of the credit contract for the liability under the RICO action against Power Home.

101.    On behalf of the Addition Class, the Plaintiffs named in Paragraph 65 above bring a RICO action against RICO for violations of 18 U.S.C. § 1962(c), and Addition is also liable pursuant to the terms of the credit contract for the liability under the RICO action against Power Home.

102.    On behalf of the SLST Trust Class, the Plaintiffs named in Paragraph 69 above assert that SLST Trust is liable pursuant to the terms of the credit contracts it purchased for the liability under the RICO action against Power Home.

103.    The RICO enterprise consists of Waller, Power Home, the financial-entity defendants (including DOE Defendants 1-10), Defendants' sales agents, and one or more third party financial technology vendor whose software interface Defendants used to calculate the various parts of the installation contracts and credit contracts associated with the systems Power Home sold to Plaintiffs and the putative class members.

104.    This enterprise had a specific purpose of selling and financing residential solar installations through a hard sales tactic that included misrepresentations.

105.    This enterprise was dependent on the network of contractual relationships between the members of the enterprise.

106.    This enterprise also required that Power Home and those financial-entity defendants use the same agent to negotiate the Power Home installation contract and the credit contract.

107.    The enterprise lasted many years up until Power Home's bankruptcy filing.

108.    The enterprise was in interstate commerce and used the telephone and wires to both communicate information and in the creation of electronically signed documents and disclosures.

109.    The members of the enterprise, Power Home, Waller, the financial-entity defendants, their sales agents, and third party technology vendors involved in the creation of the credit contracts are each legally distinct entities.

110.    These Defendants each have their own business location.

111.    These Defendants each perform independent actions within the enterprise.

112.    Thus, each of these Defendants conducted or participated, directly or indirectly, in the conduct of that enterprise's affairs.

113.    These Defendants are also presumed to have knowledge of the information possessed by their sales agents, who knew that the hidden fee was not disclosed to the consumer, that no reasonable estimate of the actual benefit of the federal tax credit to any particular consumer was ever made, and that promises were made about the efficiency of the system that would never be realized.

114.    Through the enterprise, Defendants conducted or participated directly or indirectly in acts of wire fraud by misrepresenting through the phone, email, and internet two material facts about the credit: the true amount of the principal of the credit being extended, and the benefit that would be provided from the federal tax credit.

115.    Defendants used income from racketeering activity to operate an enterprise engaged in interstate commerce and received money from that activity and invested it in the enterprise, all in violation of 18 U.S.C. § 1962(a).

116.    Plaintiffs and the Power Home class they seek to represent were all harmed by reason of Power Home and Waller's violations of 18 U.S.C. § 1962(a).

117.    Waller and the sales agents were employed by Power Home, and Dividend, GoodLeap, Mosaic, Cross River, Tech CU, Digital, Addition, and Sunlight contracted, directly or indirectly, with Power Home to provide financing for the fraudulent solar installation and credit contracts associated with the enterprise, and they participated, directly or indirectly, in the conduct of that enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

118.    These Defendants' actions in violation of RICO were a proximate cause of injury to named Plaintiffs and each member in the putative main class and each subclass.

## Count Two

## VCPA- All Defendants except Addition

119.    Defendants Power Home, Dividend, GoodLeap, Mosaic, and Sunlight were each suppliers, as that term is defined at Va. Code § 59.1-198, and regulated by the VCPA.

120.    By virtue of his authority, knowledge, and control over Power Home, Waller was also a supplier, as that term is defined at Va. Code § 59.1-198, and regulated by the VCPA

121.    Defendants Cross River, Tech CU, Digital, and SLST Trust are not directly regulated by the VCPA but are, along with Dividend, GoodLeap, Mosaic, and Sunlight, derivatively liable pursuant to the terms of the credit contract for the VCPA claim against Power Home.

122.    The Plaintiffs and each member of the main class are consumers who engaged in consumer transactions regarding the installation of a solar power system.

123.    On behalf of the Power Home Class, all Named Plaintiffs who lived in Virginia at the time of the transaction bring a VCPA action against Power Home and Waller under Virginia Code § 59.1-204.

124.    On behalf of the Dividend Class, the Virginia residents named in Paragraph 60 above bring a VCPA action against Dividend under Virginia Code § 59.1-204, and Dividend is also liable pursuant to the terms of the credit contract for the liability under the VCPA action against Power Home.

125.    On behalf of the GoodLeap Class, the Virginia residents named in Paragraph 61 above bring a VCPA action against GoodLeap under Virginia Code § 59.1-204, and GoodLeap is also liable pursuant to the terms of the credit contract for the liability under the VCPA action against Power Home.

126.    On behalf of the Mosaic Class, the Virginia residents named in Paragraphs 62 and 68 above bring a VCPA action against Mosaic under Virginia Code § 59.1-204, and Mosaic is also liable pursuant to the terms of the credit contract for the liability under the VCPA action against Power Home for all credit contracts it ever held.

127.    On behalf of the Cross River Class, the Virginia residents named in Paragraph 63 above bring a VCPA action against Cross River because it is liable pursuant to the terms of the credit contract for the liability under the VCPA action against Power Home.

128.    On behalf of the Tech CU Class, the Virginia residents named in Paragraph 64 above bring a VCPA action against Tech CU because it is also liable pursuant to the terms of the credit contract for the liability under the VCPA action against Power Home.

129.    On behalf of the Digital Class, the Virginia residents named in Paragraph 67 above bring a VCPA action against Digital because it is also liable pursuant to the terms of the credit contract for the liability under the VCPA action against Power Home.

130.    On behalf of the Sunlight Class, the Virginia residents named in Paragraph 66 above bring a VCPA action against Waller and Sunlight under Virginia Code § 59.1-204, and

Sunlight is also liable pursuant to the terms of the credit contract for the liability under the VCPA action against Power Home for all credit contracts it ever held.

131.    On behalf of the SLST Trust Class, the Virginia residents named in Paragraph 69 above assert that SLST Trust is liable pursuant to the terms of the credit contracts it purchased for the liability under the VCPA action against Power Home.

132.    In the transactions with the Virginia residents and the Virginia members of the Power Home Class, Defendant Power Home violated Va. Code § 59.1-200(A)(5), (8) and (14) by the misrepresentations set forth in the facts above about the effectiveness and efficiency of the system being sold, about the hidden fee that increased the price of the system, and about the actual way any federal tax credit would work and its estimated value.

133.    In the transactions with the Virginia residents who are the members of each respective subclass, Defendants Dividend, GoodLeap, Mosaic, and Sunlight all violated Va. Code § 59.1-200(A)(5), (8) and (14) by the misrepresentations set forth in the facts about the hidden fee that increased the price of the system, and about the actual way any federal tax credit would work and its estimated value.

134.    In the transactions with the Virginia residents who are the members of each of their respective subclasses, Defendants Dividend, GoodLeap, Mosaic, and Sunlight also all violated Va. Code § 59.1-200(A)(5), (8) and (14) by the misrepresentations which their agent knew about the effectiveness and efficiency of the system being sold.

135.    These Plaintiffs and each Virginia member of the main class and respective subclasses suffered a loss as a result of each of these Defendants' violations of the VCPA.

136.    The violations were willful, or in the alternative were negligent and not the result of a bona fide error.

**Count Three**

**UDTPA-Power Home, Waller, Goodleap, Dividend, Addition, Tech CU, and Sunlight**

137.    The transactions, acts and omissions of all Defendants constitute "commerce" as defined by N.C. Gen. Stat. § 75-1.1(b).

138.    Plaintiffs and each member of the main class are consumers who engaged in consumer transactions regarding the installation of a solar power system.

139.    On behalf of the Power Home Class, all the Named Plaintiffs who were residents of North Carolina at the time of the transaction bring a UDTPA action against Power Home and Waller under N.C. Gen. Stat. § 75-16.

140.    On behalf of the Dividend Class, the North Carolina residents named in Paragraph 60 above bring a UDTPA action against Dividend under N.C. Gen. Stat. § 75-16, and Dividend is also liable pursuant to the terms of the credit contract for the liability under the UDTPA action against Power Home.

141.    On behalf of the GoodLeap Class, the the North Carolina residents named in Paragraph 61 above bring a UDTPA action against GoodLeap under N.C. Gen. Stat. § 75-16, and GoodLeap is also liable pursuant to the terms of the credit contract for the liability under the UDTPA action against Power Home.

142.    On behalf of the Addition Class, the North Carolina residents named in Paragraph 65 above bring a UDTPA action against Addition under N.C. Gen. Stat. § 75-16, and Addition is also liable pursuant to the terms of the credit contract for the liability under the UDTPA action against Power Home.

143.    On behalf of the Tech CU Class, the North Carolina residents named in Paragraph 64 above bring a UDTPA action against Waller and Tech CU under N.C. Gen. Stat. § 75-16, and

Tech CU is also liable pursuant to the terms of the credit contract for the liability under the UDTPA action against Power Home.

144.     On behalf of the Sunlight Class, the North Carolina residents named in Paragraph 66 above bring a UDTPA action against Waller and Sunlight under Virginia N.C. Gen. Stat. § 75-16, and Sunlight is also liable pursuant to the terms of the credit contract for the liability under the UDTPA action against Power Home for all credit contracts it ever held.

145.     In the transactions with the named North Carolina residents and the North Carolina members of the Power Home Class, Defendant Power Home violated N.C. Gen. Stat. § 75-1.1 by the misrepresentations set forth in the facts above about the effectiveness and efficiency of the system being sold, about the hidden fee that increased the price of the system, and about the actual way any federal tax credit would work and its estimated value.

146.     In the transactions with the North Carolina residents who are the members of each respective subclass, Defendants all violated N.C. Gen. Stat. § 75-1.1 by the misrepresentations set forth in the facts about the hidden fee that increased the price of the system, and about the actual way any federal tax credit would work and its estimated value.

147.     In the transactions with the North Carolina residents who are the members of each of their respective subclasses, Defendants also all violated N.C. Gen. Stat. § 75-1.1 by the misrepresentations which their agent knew about the effectiveness and efficiency of the system being sold.

148.     These Plaintiffs and each North Carolina member of the main class and respective subclasses suffered monetary and non-monetary injuries that were proximately caused by each of these Defendants' violations of the UDTPA.

149.     The violations were willful, unfair, deceptive and/or malicious.

**Count Four**

**Fraud-All Defendants**

150.    On behalf of the Power Home Class, all Named Plaintiffs bring a fraud action against Power Home and Waller under applicable common law and Virginia Code § 59.1-204.

151.    On behalf of the Dividend Class, the Plaintiffs named in Paragraph 60 above bring a fraud action against Dividend, and Dividend is also liable pursuant to the terms of the credit contract for the liability under the fraud action against Power Home.

152.    On behalf of the GoodLeap Class, the Plaintiffs named in Paragraph 61 above bring a fraud action against GoodLeap, and GoodLeap is also liable pursuant to the terms of the credit contract for the liability under the fraud action against Power Home.

153.    On behalf of the Mosaic Class, the Plaintiffs named in Paragraphs 62 and 68 above bring a fraud action against Mosaic, and Mosaic is also liable pursuant to the terms of the credit contract for the liability under the fraud action against Power Home for all credit contracts it held.

154.    On behalf of the Cross River Class, the Plaintiffs named in Paragraph 63 above bring a fraud action against Cross River, and Cross River is also liable pursuant to the terms of the credit contract for the liability under the fraud action against Power Home.

155.    On behalf of the Tech CU Class, the Plaintiffs named in Paragraph 64 above bring a fraud action against Tech CU, and Tech CU is also liable pursuant to the terms of the credit contract for the liability under the fraud action against Power Home.

156.    On behalf of the Digital Class, the Plaintiffs named in 67 above bring a fraud action against Digital, and Digital is also liable pursuant to the terms of the credit contract for the liability under the fraud action against Power Home.

157.    On behalf of the Addition Class, the Plaintiffs named in Paragraph 65 above bring a fraud action against Addition, and Addition is also liable pursuant to the terms of the credit contract for the liability under the fraud action against Power Home.

158.    On behalf of the Sunlight Class, the Plaintiffs named in 66 above bring a fraud action against Waller and Sunlight, and Sunlight is also liable pursuant to the terms of the credit contract for the liability under the fraud action against Power Home for all credit contracts it ever held.

159.    On behalf of the SLST Trust Class, the Plaintiffs named in Paragraph 69 above assert that SLST Trust is liable pursuant to the terms of the credit contracts it purchased for the liability under the fraud action against Power Home.

160.    In the transactions with Plaintiffs and the members of the Power Home Class, Defendant Power Home committed actual fraud by inducing the installation contract by the misrepresentations and concealment as to how the hidden fee increased the price of the system, and by misrepresenting that it knew a specific dollar amount of a federal tax credit would be available at one time to the consumer even though it knew it made no effort to actually estimate the amount the consumer would receive.

161.    Power Home and Waller intended that the victims rely on these false representations and concealments.

162.    All Plaintiffs relied on these false statements and signed installation contracts with Power Home, and suffered damages as a result, including that their initial loan principal was higher than the actual dollar amount provided to Power Home.

163.    In the transactions with the named Plaintiffs who are the members of each of their respective subclasses, Defendants Dividend, GoodLeap, Mosaic, Cross River, Tech CU, Digital, Addition, and Sunlight all committed actual fraud by inducing the credit contract by concealing

how the hidden fee increased the price of the system, by misrepresenting and concealing that the actual loan amount paid to Power Home was less than the disclosed principal on the credit contract, and by having their agent misrepresent that it knew a specific dollar amount of a federal tax credit would be available at one time to the consumer even though it knew that agent made no effort to actually estimate the amount the consumer would receive.

164.   Defendants Dividend, GoodLeap, Mosaic, Cross River, Tech CU, and Sunlight intended that all their victims rely on these false representations and concealments.

165.   All Plaintiffs in the respective subclasses for Defendants Dividend, GoodLeap, Mosaic, Cross River, Tech CU, and Sunlight relied on these false statements and signed credit contracts, and suffered damages as a result, including that their initial loan principal was higher than the actual dollar amount provided to Power Home.

166.   The actions of each of these Defendants was in such reckless disregard of the rights of Plaintiffs that punitive damages should be assessed against them.

### Count Five

### TILA- Dividend, Cross River, Tech CU, Mosaic, Addition, Goodleap, and Digital

167.   Each of the Defendants who were the initial creditor in the transaction violated the TILA.

168.   The cash price of the systems were improperly inflated because these were financed transactions.

169.   The increase was to cover the fees that were charged to Power Home by the financial institutions.

170.   The true amount of the loan is the amount of the proceeds that were delivered to Power Home, as the seller.

171.   Because this amount was less than the disclosed Amount Financed, the disclosure of the Amount Financed was too high.

172.   All the borrowers were denied proper disclosures and could not knowledgeably shop for credit to buy a solar installation.

173.   All the borrowers were charged more because of this TILA violation.

174.   Except for permissible fees properly disclosed, the difference between the amount delivered to Power Home and the disclosed Amount Financed was an undisclosed Finance Charge.

175.   On behalf of the Dividend Class, the Plaintiffs named in Paragraph 60 above bring a TILA action against Dividend for violations of 15 U.S.C. § 1638(a).

176.   On behalf of the GoodLeap Class, the Plaintiffs named in Paragraph 61 above bring a TILA action against GoodLeap for violations of 15 U.S.C. § 1638(a).

177.   On behalf of the Mosaic Class, the Plaintiffs named in Paragraph 62 above bring a TILA action against Mosaic for violations of 15 U.S.C. § 1638(a) for each transaction where it was the named creditor.

178.   On behalf of the Cross River Class, the Plaintiffs named in Paragraph 63 above bring a TILA action against Cross River for violations of 15 U.S.C. § 1638(a).

179.   On behalf of the Tech CU Class, the Plaintiffs named in Paragraph 64 above bring a TILA action against Tech CU for violations of 15 U.S.C. § 1638(a).

180.   On behalf of the Digital Class, the Plaintiffs named in Paragraph 67 above bring a TILA action against Digital for violations for violations of 15 U.S.C. § 1638(a).

181.   On behalf of the Addition Class, the Plaintiffs named in Paragraph 65 above bring a TILA action against Addition for violations of 15 U.S.C. § 1638(a).

182.   These Defendants actions in violation of TILA were a proximate cause of injury to named Plaintiffs and each member in the putative main class and each subclass.

## PRAYER FOR RELIEF

Plaintiffs, for themselves and all other similarly situated people, pray that the Court enter judgment against Defendants as follows:

1.      Permanently enjoin Defendants from seeking to collect on any contract created in a Power Home transaction, and from seeking to sell or assign any entity any rights to such a contract;

2.      Find that because of Defendants' violations, each named Plaintiff and similarly-situated person is entitled to choose whether to cancel all such contracts or retain whatever benefit the system is currently producing, then, in addition to other damages to which they are entitled, the value of the benefit received is to be computed by measuring the current productivity of the system and applying the average price for a system of the effectiveness from the information provided by the National Renewable Energy Laboratory, a branch of the U.S. Department of Energy;

3.      Order that all the payments that have been made to any Defendant are to be returned to the consumer who chooses to cancel the system, and for any consumer who chooses to retain the benefit of the system such payments are to be credited to the value of the benefit being retained;

4.      Award one non-duplicate award of other actual damages to each Plaintiff and the members of the class and subclasses they seek to represent;

5.      Award treble the damages under 18 U.S.C. § 1964(b) against each Defendant;

6.      Award twice the finance charge capped at $2,000.00 under the TILA against Defendant who was the initial creditor in the transaction;

7.      For each Virginia resident, award at minimum $500.00 for each violation of the VCPA against each Defendant if the actions are found not be willful;

8.      For each Virginia resident, award treble the damages under Va. Code § 59.1-204(A) or at minimum $1,000.00 for each willful violation of the VCPA;

9.      For each North Carolina resident, award treble damages under N.C. Gen. Stat. § 75-16;

10.     For the Virginia residents, award one sum of $350,000.00 in punitive damages against all Defendants, jointly and severally;

11.     For each North Carolina resident, award punitive damages under N.C. Gen. Stat. § 1D-25 against each Defendant;

12.     Award reasonable attorneys' fees and costs under the RICO, VCPA, UDTPA, and TILA claims, and

13.     Order such other and further relief as may be deemed proper and just.

**TRIAL BY JURY IS REQUESTED**

Respectfully submitted

/s/ Rashad Blossom
Rashad Blossom (NC State Bar No. 45621)
Blossom Law PLLC
301 S. McDowell St., Suite 1103
Charlotte, NC 28204
Telephone: (704) 256-7766
Facsimile: (704) 486-5952
rblossom@blossomlaw.com
*Counsel for all Plaintiffs*

Theodore ("Thad") O. Bartholow III*
Texas State Bar No. 24062602
Karen L. Kellett*
Texas State Bar No. 11199520
KELLETT & BARTHOLOW PLLC
11300 N. Central Expressway, Suite 301
Dallas, Texas 75243
Telephone: (214) 696-9000
Facsimile: (214) 696-9001
thad@kblawtx.com

*Pro Hac Vice motions forthcoming*
*Counsel for all Plaintiffs*

Leonard A. Bennett, VSB #37523
Thomas Domonoske, VSB #35434*
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Blvd., Ste. 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: tom@clalegal.com
*Pro Hac Vice motions forthcoming*
*Counsel for all Virginia Plaintiffs:*
*Herman Bland, Sylvia Bland, Jacob Green, Emily Yeatts, Marc Vredenburg, Shon Jualin, Amber Jualin, Richard Monteria, Logan Schalk, Kim l. Larsen, Scott Larsen, Jason Schieber, Damien Sink, Heather Wilson Medlin, George w. Harris, III, Mohamed Abdalla, Reagan Atkins, Brian Baumgardner, Samantha Bowyer, Teresa Ciccone, Michael Craighead, James Crowder, Joshua Dickey, Robert Duncan, Michael Dunford, Dominic During, Glen Erwin, Anthony Fucci, Melissa Grube, Richard Harrell, Denise Henderson, Philip Joiner, Dumont Jones, Jeanette Jones, Kami Jordy, Marc Kennedy, Joshua Laplante, Stephanie Laplante, Carrie Lee, Howard Lohnes, Norma Lohnes, Elizabeth Mank, Wendy Minor, Joesil Moore, Debra Orr, Edwin Pinto - Castillo, Catherine Pistone, Rick Pistone, Jeffrey Preuss, Erin Ray, Wesley Richie, Tracey Richie, Kathy Roberson, Daniel Roberts, Pamela Seifert, Ashley Shelley, Kelly Tenorio, Lashanda Theodore, Wilson Theodore, Anthony Ward, Jerry Watson, Jesse Weaver, Kristen White, Nina Briggs, Margaret Fleshman, Angela Morris, John Morris, Carl Steinhart, Christian Stratton, Ashley Sustek, Matt Sustek*

Kristi Cahoon Kelly, VSB #72791
Patrick McNichol, VSB# 92699
KELLY GUZZO, PLC
3925 Chain Bridge Rd, Suite 202
Fairfax, Virginia 22030
Telephone: (703) 424-7572
Facsimile: (703) 591-9285
E-mail: kkelly@kellyguzzo.com
E-mail: pat@kellyguzzo.com
*Counsel for all Virginia Plaintiffs*

Jeremy P. White, VSB #48917
Blue Ridge Consumer Law, PLLC
722 Commerce Street, Suite 215
Lynchburg, VA 24504
Telephone: (434) 201-6800
Email: jeremy@consumerlawva.com
*Counsel for Plaintiffs Nina Briggs, Margaret Fleshman,*
*Angela Morris, John Morris, Carl Steinhart, Christian Stratton,*

*Ashley Sustek, and Matt Sustek*

John T. O'Neal, NC State Bar # 23446
O'Neal Law Office
7 Battleground Court, Suite 101
Greensboro, NC 27408
P: 336.510.7904
F: 336.510.7965
E: john@oneallawoffice.com
*Counsel for Plaintiffs Silberio Reyes,*
*Steve Hollingshead, and Vicky Prasongphime*

Dale W. Pittman, VSB#15673
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, VA 23803
(804) 861-6000
(804) 861-3368 (Fax)
dale@pittmanlawoffice.com
*Counsel for Plaintiffs Herman Bland,*
*Sylvia Bland, Dustin Fontenot, Jacob Green, Amber Jualin,*
*Shon Jualin, Richard Monteria, Claude Mumpower,*
*Nirmal Sakthi, Marc Vredenburg and Emily Yeatts*

Michael C. Litman, VSB #92364
LITMAN PLLC
6802 Paragon Place, Suite 410
Richmond, VA 23230
(804) 723-6912
(804) 293-3973 (Fax)
mike@mlitman.com
*Counsel for Plaintiffs Heather Wilson Medlin*
*and Eric Medlin*

Emily Connor Kennedy, VSB# 83889
Mark C. Leffler, VSB# 40712
Boleman Law Firm, P.C.
2104 W. Laburnum Ave, Suite 201
Richmond, VA 23227
(804) 358-9900 – Telephone
(804) 358-8704 – Facsimile
Email: eckennedy@bolemanlaw.com
Email: mcleffler@bolemanlaw.com
*Counsel for Plaintiff George W. Harris, III*

James J. O'Keeffe (VSB no. 48620)

MichieHamlett PLLC
109 Norfolk Avenue, S.W., 2nd Floor
P.O. Box 2826 (24001)
Roanoke, VA  24011
540-491-0634
Fax: 434-951-7271
jokeeffe@michiehamlett.com
*Counsel for Kim and Scott Larsen, Damien Sink, Logan Schalk, and Jason Schieber*