## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

IN RE:

**POWER HOME SOLAR, LLC,**

   **Debtor**

Ch. 7

Case No. 22-50228

_____

**CLAUDE MUMPOWER et al.,**
**for themselves and on behalf of**
**others similarly situated,**

   **Plaintiffs,**

**v.**

**POWER HOME SOLAR, LLC et al.,**

   **Defendants.**

Adv. Pro. No.  23-03005

_____


### PLAINTIFFS' OPPOSITION MEMORANDUM TO
### DEFENDANT DIGITAL FEDERAL CREDIT UNION'S
### <u>MOTION TO COMPEL ARBITRATION</u>


  The Plaintiffs, Richard Monteria, Pamela Seifert, and Paul Campbell, on behalf of themselves and all others similarly situated, oppose the Motion to Compel Arbitration (ECF No. 83) filed by Defendant Digital Federal Credit Union ("Digital"). This Court should deny the Motion because arbitration of these issues would substantially interfere with the core bankruptcy functions of this Court. To

the extent this Court finds any of the claims to not be constitutionally core, Digital consented to final adjudication of the arbitration issue when it asked this Court to enter the order on its Motion to Compel.

## INTRODUCTION

This case concerns a fraudulent scheme orchestrated by Defendants that induced consumers to purchase underperforming solar power systems at secretly inflated prices. Virginia residents Richard Monteria, Pamela Seifert, and Paul Campbell, were some of those consumers. Their loans from Digital were arranged by Power Home Solar, LLC ("Power Home"), with the assistance of Solar Mosaic, Inc. ("Mosaic") for the purchase of a solar power system. As alleged in the Amended Complaint, all of these loans included a hidden fee not disclosed on the loan document, which, though concealed, was in fact included in the price of the system and thereby increased the total amount of financing that Plaintiffs received from Digital.

This class action seeks to remedy that wrong and others. These Plaintiffs allege that Power Home, its CEO Jayson Waller, Mosaic, and Digital violated the federal Racketeer Influenced and Corrupt Organizations Act (RICO), and that they committed common law fraud. Also, for its derivative liability under the terms of its loan agreement, these Plaintiffs allege Digital has liability under the Virginia

Consumer Protection Act (VCPA). Additionally, these Plaintiffs assert a Truth in Lending Act (TILA) claim against Digital, as do other Plaintiffs against other non-debtor defendants. All of Plaintiffs' claims are inextricably intertwined with and will necessarily be resolved by the Court in connection with the Court's adjudication of Plaintiffs' claims against the Debtor. Indeed, even Plaintiffs' TILA claim will necessarily be resolved by the Court's adjudication of their other claims against the Debtor, as all claims are based on the same fraudulent loan transactions.

By contrast, Digital's motion to compel arbitration seeks to needlessly multiply this litigation by severing Plaintiffs' inextricably intertwined claims against Power Home and Digital from this unified class action adversary proceeding and sending them to a separate arbitration based on the same facts and legal issues that this Court is already going to be resolving in determining the contested creditors' claims in this case, including Plaintiffs' proofs of claim. Indeed, Digital recognizes that the claims are inextricably intertwined and for that reason asserts an arbitration agreement to which it is not a signatory.

The Court should deny Digital's motion because compelling a separate arbitration of each Plaintiff's claims against Digital in this case is incompatible with the efficiency and collective resolution policies that are fundamental to bankruptcy administration.

# I.

## FACTUAL BACKGROUND

These Plaintiffs have filed individual proofs of claim against the Debtor based on the claims asserted in this adversary proceeding; they are also among the named plaintiffs in this adversary proceeding, and they have, together with the other named plaintiffs, filed a class proof of claim in the Power Home bankruptcy, to which no party in interest has objected.

The operative Amended Complaint details the misrepresentations and fraud that were systematically carried out by Power Home in coordination with the financial-entity defendants, including Digital. (*See* Am. Compl. ¶¶ 2–7, 28–92, ECF No. 34.) The named Plaintiffs in this action are residents of Virginia or North Carolina who signed separate contracts with Power Home for the installation of a home solar panel system with financing to be arranged with the financial-entity defendants, but only Virginia residents have asserted claims against Digital.

These Plaintiffs do not dispute the signed contracts which Digital has provided the Court. (Ex. 1 to 6 to Declaration of Lindsey Thomasian attached to Digital's Memorandum in Support of Motion at ECF No. 84-2 through 84-7.)  These are the contracts that were arranged for them by a Power Home sales representative. (Am. Compl. ¶ 77.)  Each loan contract in Paragraph 12 references Mosaic. (See second paragraph, pg. 10, ECF No. 84-5, 84-6, 84-7). As explained in his Declaration

attached to the Amended Complaint, for Paul Campbell the Power Home salesperson put him in two different financial contracts for the same purchase, the first with Digital and the second with Defendant Goodleap, LLC. (See Ex. 1 to Amended Complaint, Para. 5, pg. 3 of 61, ECF 34-1.). Both of these entities are demanding payment for the same power system. (*Id.*)

The Amended Complaint alleges that the face amount of each loan "was not the true amount of the loan." (Am. Compl. ¶ 7.) "Instead, based on separate contracts between Power Home and the various financial entity defendants, the cash price for each financed installation was inflated to include an undisclosed fee charged by the financial entity defendants, who actually paid less to Power Home for the design, installation, and equipment than the amount of the loan proceeds." (*Id.*) "[T]he same Power Home employee who negotiated the sale of the solar power system also arranged the credit contract." (*Id.* ¶ 6.). "By wearing these two hats, that representative was an agent for Power Home and an agent for the financial entity." (*Id.*) "The dual nature of the agency role of that Power Home employee inextricably ties the valuation of each Plaintiff's claim against Power Home to the determination of the value of their claim against financial-entity Defendants involved in their transaction." (*Id.*)

As alleged, these solar power systems were sold under a standard sales pitch in conjunction with the "related financing." (*Id.* ¶ 40.) This "pitch misled consumers

about the efficiency and effectiveness of the system being sold to them, misrepresented the federal solar tax credit as a guaranteed rebate that would come back to the consumer in one lump sum, and misrepresented the amount of the dollar benefit to the consumer." (*Id.* ¶ 41.) The sales agents were not trained to even determine how much of a credit a consumer might receive. (*Id.* ¶¶ 42–46.) Instead, they were trained to misrepresent "the full potentially available tax credit as a rebate that the customer would necessarily receive all at one time, as a cash payment rather than a reduction in tax owed." (*Id.* ¶ 48.) The agents were trained to "discuss the monthly payment that would be required to pay the loan as if the full amount of the tax credit would be available to the consumer the following year." (*Id.* ¶ 50.)

"Power Home established contracts with the financial-entity defendants for those entities to work with Power Home to sell and finance residential solar power systems that produced electricity." (*Id.* ¶ 29.) Power Home had "hidden fee agreements with the financial entity defendants" which, in this instance, refers to Digital. (*Id.* ¶ 37). The sales process "ensured that the agents who sold the system and arranged the financing did not disclose the hidden fee." (*Id.* ¶ 38.)

Plaintiffs' Amended Complaint explains how Power Home increased the cost of the system far higher than if the consumer were to pay cash. (*Id.* ¶ 53.) It details how this was to cover the hidden fee. (*Id.* ¶ 55.) Specifically, "the purported cash price of the system was determined in part by the credit granting protocols of the

6

financial-entity defendants and their secret agreement with Power Home (through Waller) regarding the hidden fee that the financial-entity defendants retained from the principal amount of the loan to the consumer purportedly for the cost of the solar installation contract." (*Id.* ¶ 56.) "None of the Plaintiffs were told that the price of the system had been increased because of the hidden fee being retained by the financial-entity defendant that was working with Power Home." (*Id.* ¶ 60.)

"No Plaintiffs were aware of the hidden fee in their contract because the Defendants took affirmative steps to conceal its existence from them." (*Id.* ¶ 81.) Those steps are set forth in Paragraphs 82 through 85 of the Amended Complaint.

All the claims against the Debtor and Digital in the Amended Complaint have at their core the unlawful nature of the hidden fee. These Plaintiffs recognize that they may recover actual damages only one time on these inter-related claims. As for the direct liability of Digital, "recovery of damages for that direct liability, which cover the same damages as a claim against Power Home, may also reduce the amount of the Plaintiffs' claims against Power Home, potentially leaving more resources available for the bankruptcy estate, which may improve the potential recovery available to Power Home's non-consumer creditors." (*Id.* ¶ 8.)

Furthermore, as set forth in paragraph 15 of Digital's loan contracts, Digital contractually agreed to be liable for all claims and defenses that these Plaintiffs have against Power Home, up to the amount owed under the loan. (See pg. 11, ECF No.

84-5, 84-6, 84-7). This clause is also common to the other Plaintiffs "such that any claim the consumer has against Power Home is also a claim that can be raised against the finance entity Defendants, which themselves are creditors of Power Home in its (above captioned) bankruptcy case." (*Id.* ¶ 3.) Plaintiffs have alleged that Digital, as one of the financial entity defendants, can assert claims against Power Home through indemnity agreements or other legal theories. (*Id.* ¶ 4.)

Plaintiffs assert that Defendants' unlawful conduct allows them, and all other victims, to choose to cancel their contracts and have their system removed and have their property replaced to its previous condition. (*Id.* ¶ 94.)  All these victims should also be able to choose to keep a functioning system and recover their actual damages based on the value of the electricity being produced. (*Id.* ¶ 95.)

These Plaintiffs do not yet have a copy of the agreement between Mosaic and Power Home that was in place at the time of their transactions, but they know that by 2020 the standard installer agreement used by Mosaic included indemnity agreements and insurance requirements. (See attached Exhibit 1, Mosaic Loan Program Participation Agreement, Para. 2.4 and 10.1). Furthermore, as shown in Exhibit 3 to the Amended Complaint, Mosaic's standard practice was to assess a dealer fee that increased as the purported annual percentage rate of the loan contract decreased. This rate card also identifies that the "payment factor" assumes each loan

will necessarily have "a 26% Federal Solar Investment Tax Credit." (Am. Compl.

Exhibit 3, under **, ECF 34-3.)

Finally, although the loan agreements each refer to a section called

"Governing Law, Arbitration and Miscellaneous" in Paragraph 11, no such

arbitration section is actually included in the agreements. (See pg. 10, ECF No. 84-

5, 84-6, 84-7).

## II.

## TO ACCOMPLISH THE PURPOSE OF THE BANKRUPTCY CODE THE ARBITRATION CLAUSE SHOULD NOT BE ENFORCED REGARDING PLAINTIFFS' CONSTITUTIONALLY CORE CLAIMS AGAINST BOTH THE DEBTOR AND DIGITAL.

These Plaintiffs are not contesting the basic validity of the arbitration clause

in their Power Home contracts, nor that Digital initially has the right to enforce that

clause on the claims in issue. Instead, Plaintiffs oppose Defendant's motion because

arbitration of Plaintiffs' claims against it would present an irreconcilable conflict

between the Federal Arbitration Act (FAA) and the Bankruptcy Code, which

therefore precludes enforcement of the FAA on the facts of this case. Because

arbitration of Plaintiffs' claims against Defendant in this case is incompatible with

the efficient administration of bankruptcy, the bankruptcy court should deny

Defendant's motion to compel arbitration.

In the context of the claims adjudication process in the Power Home

bankruptcy, the FAA cannot be reconciled with the provisions of the later-enacted

Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA) with respect to Digital's rights to assert the arbitration agreement embedded in the Power Home contracts with the Plaintiffs. *See Georgia v. Pennsylvania R. Co.*, 324 U.S. 439, 456–457 (1945) (repeal by implication occurs when earlier and later Federal statutes are irreconcilable); *Morton v. Mancari*, 417 U.S. 535, 550(1974) (same). These Plaintiffs agree with Digital that it has rights under that arbitration agreement because of the "substantially interdependent and concerted misconduct" between it and Power Home, but those rights are secondary to the necessity of this Court to adjudicate the issues in the bankruptcy claims before it.

Although courts ordinarily strongly disfavor the implied repeal of one federal statute by another, *see Randolph v. IMBS, Inc.,* 368 F.3d 726, 730 (7th Cir. 2004) ("repeal by implication is a rare bird indeed"), bankruptcy is a unique area of law that has been specifically carved out by Congress, *see In re Bauer*, No. AP 20-80012-DD, 2020 WL 3637902, at \*3 (Bankr. D.S.C. June 8, 2020) (discussing *Allen v. Cooper*, 140 S. Ct. 994 (2020) (comparing copyright law with bankruptcy law because both are mentioned in Article I of the United States Constitution, recognizing the "singular nature" of a bankruptcy court's jurisdiction and acknowledging "bankruptcy exceptionalism")).

Other than these Plaintiffs' TILA claim, which they assert solely against Digital, this adversary proceeding asserts inseparable constitutionally core claims

10

against both Digital and the Debtor, which will necessarily be resolved in the claims

allowance process established under the Bankruptcy Code and Federal Rules of

Bankruptcy Procedure. These Plaintiffs acknowledge that their TILA claim is not a

core bankruptcy claim for purposes of 28 U.S.C. § 157 because the TILA count seeks

relief solely from Digital. Nevertheless, the central issue at the heart of the TILA

claim—whether the Debtor, Mosaic, and Digital included the unlawful secret

finance charge in Digital's loan to Plaintiffs for their solar power system—will be

decided in connection with the resolution of Plaintiffs' non-TILA claims against the

Debtor. Additionally, the resolution of the proof of claim will also necessarily

determine the amount of actual damages from the hidden fee, and that the Digital

loan is part of a consumer transaction. As a credit union, Digital will not be able to

deny that it is a creditor as the term is defined in TILA. The only separate issue that

would be decided in resolving Plaintiffs' TILA claim would be the statutory

damages remedy, which is a purely mathematical computation under 15 U.S.C. §

1640(a).

The question of whether a bankruptcy court may enter a final judgment in a

case depends on whether the cause of action stems from the bankruptcy itself or

would necessarily be resolved in the claims allowance process. *Stern v. Marshall,*

564 U.S. 462 (2011). Because Plaintiffs' inextricably intertwined non-TILA claims

against the Debtor and Digital will necessarily be resolved in the claims allowance

11

process, Plaintiffs' claims against the Debtor and Digital are constitutionally core such that this Court may enter final judgment on them.

As for Plaintiffs sole non-constitutionally core claim against Digital (for violation of TILA), Digital has asked this Court to decide this issue and has not objected to the Court exercising jurisdiction in the first instance over this matter. Therefore, with this consent, this Court can decide all the matters raised by Digital.

Conducting contemporaneous separate arbitrations of Plaintiffs' claims against Digital while this Court adjudicates Plaintiffs' identical core claims against the Debtor and other Defendants would produce an unworkable administrative nightmare that further confirms the irreconcilable conflict between the FAA and the Bankruptcy Code with respect to the facts of this case. The Fourth Circuit recognizes that inherent conflicts exist between the FAA and the Bankruptcy Code, and the facts of this case likewise present an irreconcilable conflict between these laws. In *Moses v. CashCall, Inc.*, 781 F.3d 63 (4th Cir. 2015), the Fourth Circuit affirmed the district court's holding that the appellant was not required to arbitrate a "constitutionally core" claim, which was necessarily resolved in connection with the claims allowance process. *Id.* (denying creditor's motion to dismiss or compel arbitration of adversary proceeding by Chapter 13 debtor seeking declaratory judgment that creditor's consumer loan was "void *ab initio*" under North Carolina law and seeking damages under the North Carolina Debt Collection Act, finding that the adversary proceeding

was a core bankruptcy proceeding because it involved the allowance or disallowance of claims, but finding that Mrs. Moses' second cause of action was non-core and it could therefore not enter a final judgment. *Id.* at 68–69).

Just as requiring arbitration of the Plaintiff's constitutionally core declaratory judgment claim in *CashCall* posed an inherent conflict with the Bankruptcy Code, so too would requiring separate arbitration of Plaintiffs' non-core claims against Digital. The same facts and legal issues will necessarily be resolved in the Court's determination of Plaintiffs' claims against Power Home, as will be resolved with respect to their claims against Digital.

Digital's attempt to compel arbitration of Plaintiffs claims against it in this case is an attempt to protect its own interests without regard to the detrimental effect that doing so would cause to the efficiency and fairness of the administration of the Power Home bankruptcy. While Digital's motivation is understandable, the effect of its proposal on the administration of this case is untenable.

Compelling separate arbitrations of each Plaintiff's claims against Digital would result in separate determinations by each arbitrator in each arbitration of precisely the same issues that this Court will already be deciding with respect to each of the Plaintiffs' identical claims against the Debtor. Compelling arbitration in this case thus guarantees inconsistent results, both from one arbitral award to the next, and as between the amount of the arbitral awards and the Court's own determination

13

of the consumers' identical claims against the Debtor. Moreover, compelling arbitration places an unnecessary economic burden on Plaintiffs and the debtor's other consumer creditors, as they would be obligated to pay Bankruptcy Court fees to lift the automatic stay to pursue arbitrations of their claims against the non-debtor Defendants, as well as fees for initiating the arbitration proceeding, even though this Court will already be determining Plaintiffs' identical claims against the Debtor in the ordinary course of administering this Chapter 7 case.

The FAA and the Bankruptcy Code both are grounded in important policy considerations concerning efficiency and fairness. *See In re McPherson*, 630 B.R. 160, 166–67 (Bankr. D. Md. 2021). However, unlike the FAA, the Bankruptcy Code is not party- or contract-specific, which is what Digital's motion fails to address. Bankruptcy administration determines and balances the rights of many parties that hold a variety of legal rights and interests involving the debtor. It is this collective balancing that is critical to the Bankruptcy Court's ability to administer the bankruptcy process efficiently and expeditiously:

> Bankruptcy cases are different in purpose and scope from most other debtor-creditor matters and two-party disputes in general. Bankruptcy law is collectivist in nature, impacting a debtor and potentially many of her creditors. Its purpose protects the debtor's fresh start while equitably adjusting and enforcing creditor payment rights. […] Uniform application of the law […] should not depend upon whether the issue is before a judicial officer or an arbitrator and should not vary depending upon whether a creditor has contracted for arbitration or not. To the extent that the bankruptcy clause in the United States Constitution was intended to ensure uniformity in application of the law to sovereign

14

states, likewise it requires uniformity of the law […] to all debtors and
creditors.

*In re Bauer*, 2020 WL 3637902, at *8.

"Although the objectives of the FAA and the Code may not always conflict,
they frequently do diverge, presenting the bankruptcy court with competing
considerations." *In re McPherson*, 630 B.R. 160, 167 (Bankr. D. Md. 2021) (citing
*In re White Mountain Mining Co., L.L.C.*, 403 F.3d 164, 169 (4th Cir. 2005)
("Arbitration is inconsistent with centralized decision-making because permitting an
arbitrator to decide a core issue would make debtor-creditor rights 'contingent upon
an arbitrator's ruling' rather than the ruling of the bankruptcy judge assigned to hear
the debtor's case.")). This is why "'Congress intended to grant comprehensive
jurisdiction to bankruptcy courts so that they might deal efficiently and expeditiously
with all matters connected with the bankruptcy estate.'" *Moses v. CashCall, Inc.*,
781 F.3d 63, 71 (4th Cir. 2015) (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300,
308 (1995)).

Determining the "allowance or disallowance of claims against the estate," 28
U.S.C. § 157(b)(2)(B), is both constitutionally and statutorily core, *see CashCall*,
781 F.3d at 70. Thus, ruling on the amount of a claim is central to the operation of
the Bankruptcy Court. To effectively carry out its statutory duty, the Bankruptcy
Court must necessarily be able to decide the validity of claims before it. In light of
the purposes underlying the Bankruptcy Code of "centraliz[ing] disputes over the

debtor's assets and obligations in one forum," *id.* at 72, the Bankruptcy Court should not relinquish its control over determining whether to allow or disallow a claim; doing so necessarily interferes with its basic function to determine such claims. Thus, as set forth in *Cashcall,* the determination of the validity of a claim is not something any bankruptcy court must send to arbitration. *Id.*

Determining the amount of these Plaintiffs' Proofs of Claim is a necessary part of the statutory bankruptcy process that Congress has created the Bankruptcy Court to oversee; it is not something an arbitrator decides. Plaintiffs agree with Digital that the test set forth in *Brantley v. Republic Mortg. Ins. Co.,* 424 F.3d 392, (4th Cir. 2005), regarding "allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract" applies in this instance. This "substantially interdependent" nature of the claims against the Debtor is why the claims against Digital cannot be sent to arbitration. Thus, the intertwinement that allows Digital to assert rights under the Power Home agreement is the reason why, in this Court, arbitration should not be compelled. Also, Jayson Waller, another co-defendant, has also filed a Proof of Claim, designated by the Court as Claim Number 5607, which asserts an unliquidated claim of indemnity rights against Power Home to the extent that any person asserts any claims against him in his role as an officer, manager, or employee of Power Home, and that claim must necessarily be decided by this Court. That claim

is also directly controlled by the outcome of Plaintiffs' claims about Digital's role in the scheme.

Significantly, this Court's determination of the amount of these Plaintiffs' Proofs of Claim against the Debtor will be a function of whether they are required to pay all, some, or none of the Digital loans. That determination necessarily has three parts: (i) Digital's direct liability for the misconduct of the Power Home agent it used to negotiate the loan, (ii) for its participation in the hidden fee scheme, (iii) and Digital's derivative liability under the terms of the loan for Power Home's misconduct.

Regardless of the direct or derivative liability, Plaintiffs' claims are based on the exact same conduct in a transaction by a sales agent who worked for both Power Home and Digital. Digital is also a necessary party to determine the amount of liability to be assessed against Power Home under each of these Plaintiffs' Proofs of Claim regarding loans from Digital because, to the extent the Plaintiffs are relieved from paying any part of the Digital loan, their claims against Power Home are correspondingly reduced. If that determination is not made within the bankruptcy case, the liability claim against Power Home would be overstated to the detriment of other creditors.

Similarly, the amount of Waller's claims against Power Home will also be determined, in part, by the outcome of the Plaintiffs' claims against Digital.

Discovery will show the full extent of the indemnity agreements that link Waller and

all these entities. Depending on Power Home's and the other Defendants' respective

indemnification and contractual reimbursement rights that relate to the loans at issue,

the liability assessed against and/or recovered from Digital will impact the amount

of Plaintiffs' proofs of claim against Power Home. Accordingly, because separate

arbitration of Plaintiffs' claims against Digital is incompatible with the provisions

and purposes of the Bankruptcy Code, the Court should find that enforcement of the

FAA in this case is precluded by the provisions and purposes of the later enacted

Bankruptcy Code.

## III.

### EVEN IF NOT CONSTITUTIONALLY CORE, SEPARATE ARBITRATION OF PLAINTIFFS' CLAIMS AGAINST DIGITAL WOULD SUBSTANTIALLY INTERFERE WITH THE FUNCTIONS OF THE BANKRUPTCY COURT.

When determining whether substantial interference with the Bankruptcy Code

exists, the arbitral process is not to be given preference. Under the Federal

Arbitration Act, "federal policy is about treating arbitration contracts like all others,

not about fostering arbitration." *Morgan v. Sundance, Inc.*, - U.S -, 142 S. Ct. 1708,

1713 (2022). "The Federal Arbitration Act eliminates hostility to private dispute

resolution; it does not create a preference for that process." *Gotham Holdings, LP v.

Health Grades, Inc.*, 580 F.3d 664, 666 (7th Cir. 2009). Sending these Plaintiffs'

claims against Digital to a separate arbitration would substantially interfere with the

18

Bankruptcy Court's efficient administration of this case, whether or not the claims are core.

As the Fourth Circuit determined in *In re Bestwall*, litigating the exact same claims in forums other than the bankruptcy court inevitably affects the bankruptcy estate. See *In re Bestwall LLC*, -- F. 4th. --, 2023 WL 4066848, at *6 (4th Cir. 2023) (affirming 2022 WL 67469 (W.D.N.C. Jan. 06, 2022), which affirmed 606 B.R. 243 (Bankr. W.D.N.C. 2019)).[1] For a similar reason, in *Allied Title Lending v. Taylor*, both the Bankruptcy Court and the District Court found that the plaintiff's state law claim should not be sent to arbitration. The Bankruptcy Court specifically found that the usury claim concerned whether money was owed, and that it "would necessarily be resolved by the Court in the claims allowance process when considering Allied's proofs of claim." *In re Taylor*, 594 B.R. 643, 654 (E.D. Va. Bankr. 2018). Similarly, the District Court found that "because resolution of Counts II and III would determine the very validity of Allied's Claims against Taylor's bankruptcy estate, referral of those Counts to arbitration would defeat the "animating purpose" of the Bankruptcy Code . . . By referring Counts II and III to arbitration, or by keeping

---

[1] In *Bestwall*, the Fourth Circuit held "[as] the bankruptcy court correctly determined, the asbestos-related claims against Bestwall are identical to the claims against New GP pending now or likely to be pending in the future in the various state courts." *Id.* One reason for such jurisdiction is because "the bankruptcy procedures promote the equitable, streamlined, and timely resolution of claims in one central place compared to the state tort system, which can and has caused delays in getting payment for legitimate claimants." *Id.* at *9.

one and referring the other, the Bankruptcy Court would risk inconsistent results —

results that directly impact the reorganization of Taylor's bankruptcy estate." *Allied

Title Lending, LLC v. Taylor*, 420 F. Supp. 3d 436, 450 (E.D. Va. 2019).

Just like in the *Taylor* case, when this Court determines the causes of action

against the Debtor as part of determining these Plaintiffs' claims, it will necessarily

determine the issues against Digital. As in *Bestwall*, having the case against Digital

decided in another forum risks "issue preclusion, inconsistent liability, and

evidentiary issues." *See* 2023 WL 4066848, *6.  Also as in *Bestwall*, any recovery

by the Plaintiffs against Digital "could reduce the claimants' recovery on those

claims in the bankruptcy proceeding, thereby reducing the amount of money that

would be paid out of the bankruptcy estate and leaving more funds in the estate for

other claimants." *Id.*

Finally, if the cases against Digital are sent to arbitration, the Debtor will need

to respond to discovery in each and every arbitration as well as in the adversary

proceeding and/or in connection with the adjudication of Plaintiffs' proofs of claims

in Debtor's bankruptcy. This duplication of effort will further interfere with the

bankruptcy process. Given that unity of the issues and witnesses involved in both

arbitrating the liability of Digital while also litigating the liability of Power Home in

the adversary proceeding, arbitration will substantially interfere with an efficient

resolution of the Debtor's bankruptcy.

"The bankruptcy courts are expressly invested by statute with original jurisdiction to conduct proceedings under the Bankruptcy Act." *Katchen v. Landy*, 382 U.S. 323, 326–27 (1966). "The bankruptcy courts have summary jurisdiction to adjudicate controversies relating to property over which they have actual or constructive possession." *Id.* at 327 (quotations omitted). The bankruptcy court's jurisdiction includes the resolution of claims against and by the estate. *See Cent. Virginia Community College v. Katz*, 546 U.S. 356, 369 (2006). "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate. . . ." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (quotation omitted). "All matters" means just that, and in this case, that includes the Plaintiffs' inseparable claims against Digital, the resolution of which will impact Plaintiffs' claims against the estate and impact other creditors' recoveries from the estate. This case thus demonstrates precisely why the Supreme Court's recognition of the "comprehensive jurisdiction" of the Bankruptcy Court is so critical.

When deciding whether a claim goes to arbitration, the pertinent question is not whether this is a core claim but how to maintain the Bankruptcy Code's efficient process for reorganizing debts.

> The core/non-core distinction, however, is not mechanically dispositive in deciding whether a bankruptcy judge may refuse to send a claim to arbitration. Instead, what matters fundamentally is whether compelling arbitration for a claim would inherently undermine the Bankruptcy

21

> Code's animating purpose of facilitating the efficient reorganization of
> an estate through the "[c]entralization of disputes concerning a debtor's
> legal obligations . . . ."

*Moses v. Cashcall*, 781 F.3d at 83–84 (Gregory, J., concurring regarding the non-core, debt collection practices claim) (citations removed).

Whether a core claim or not, "substantial interference" with the bankruptcy process is the test for when courts may exercise discretion to decline to enforce arbitration agreements. *Id.* at 84, 92. Regarding the declaratory judgment claim in *CashCall*, the majority (Judges Niemeyer and Gregory) agreed that arbitration was properly denied because determination of that claim by an arbitrator would pose an inherent conflict with the Bankruptcy Code because of the substantial interference with the reorganization. *Id.* at 72–73, 82. For the non-constitutionally core claim, the same substantial interference test was used. *Id.* at 84-85, 92-93 (in the concurring opinions by Judge Gregory and Judge Davis); *see also Id.* at 75-77 (Judge Niemeyer in dissent explaining his reasons for why the non-core claim should not be sent to arbitration).

Therefore, Digital incorrectly claims the test is only whether these are core proceedings or not. The constitutionally core issue does not determine the result or the test. Rather, under *Cashcall*, only the Bankruptcy Court's authority to enter a final judgment, when a party has not otherwise consented, is dependent on that distinction. Because *Cashcall* states that an arbitration decision even though

interlocutory in nature is required to meet the *Stern* test which applies to final judgments, *id.* at 72, Plaintiffs understand that under ordinary principles of precedence, this Court is to follow *Cashcall* for any claim that is not constitutionally core.

Significantly, this holding in *Cashcall* is contrary to the ordinary principle that in non-constitutionally core cases this Court retains jurisdiction to enter interlocutory orders without the need to issue proposed findings of fact and conclusions of law for the District Court to review and approve or reject. "[I]t is now very well established that bankruptcy courts consistent with *Stern v. Marshall* may handle all pretrial proceedings short of a final ruling—including entry of interlocutory orders dismissing fewer than all of the claims in an adversary complaint, granting partial summary judgment, or making discovery and evidentiary rulings—without the need to issue proposed findings of fact and conclusions of law and invocation of Fed. R. Bankr. P. 9033." *Windstream Holdings, Inc. v. Charter Comms., Inc. (In re Windstream Holdings, Inc.)*, Case No. 19-22312 (RDD), 2020 Bankr. Lexis 468, 2020 WL 833809 *2 (Bankr. S.D.N.Y. Feb. 19, 2020); *see also First-Citizens Bank & Trust Co. v. Parker Med. Holding, (In re Parker Med. Holding Co.)*, Case No. 22-50369 (JWC), 2023 Bankr Lexis 850, 2023 WL 2749715 *15, (Bankr. N.D.Ga. March 13, 2023). The holding in *Cashcall*, which appears without analysis or explanation for why an interlocutory decision is subject to treatment under *Stern* as

23

if it is a final order, is not pertinent here because Digital has asked this Court to issue

a final ruling on its Motion. It has not in this adversary proceeding informed the

Court that it wants the District Court to decide these matters. Therefore, this Court

has jurisdiction to decide the arbitration motion as an interlocutory decision without

issuing proposed findings of fact and conclusions of law even as to a claim that is

not constitutionally core. To the extent the Court disagrees and follows *Cashcall*, the

test is still the same, and the proposed findings of fact and conclusions of law should

be that any non-constitutionally core claim should not be sent to arbitration.

In its motion to dismiss or stay this case in favor of arbitration, Digital cites

to Judge Beyer's inapposite pre-*CashCall* decision in *In re Barker*, rather than

discussing the actual tests used in *Cashcall*. *Barker* was a Chapter 13 debtor's

adversary proceeding against a creditor, in which the creditor invoked an arbitration

clause in its agreement with the debtor to compel arbitration of the claims the debtor

asserted in the adversary proceeding. *See Barker v. Fox Den Acres, Inc. (In re*

*Barker)*, 510 B.R. 771 (Bankr. W.D.NC. 2014). However, *Barker* can be reconciled

with the Fourth Circuit's later *CashCall* opinion on the basis that the Chapter 13

debtor's claims against his creditors in *Barker* were not "necessarily resolved" in

connection with the administration of the debtor's Chapter 13 bankruptcy, which is

a very different process from this Chapter 7 case. *Id.* at 777. Here, the inclusion of

Digital as a Defendant in the litigation potentially has a direct impact on the Chapter

7 estate, as Digital is (presumably) solvent and, as Plaintiffs have alleged, jointly liable with the Debtor for the fraudulent scheme described in Plaintiffs' Amended Complaint. As a consequence, Plaintiffs' recovery from Digital, if any, would reduce their claim against the estate dollar-for-dollar (excluding any recovery on their separate TILA claim against Digital), which would consequently leave more estate resources available for Power Home's other creditors.

Consequently, even if any of the claims against Digital are non-constitutionally core, and even under *Cashcall*, this Court should determine that arbitration of such claims would substantially interfere with its statutory bankruptcy functions.

## **CONCLUSION**

Therefore, this Court should deny Digital's motion to compel to arbitration these Plaintiffs' claims against it. In the alternative, for any claim found not to be constitutionally core and if the Court finds it has no authority to decide in the first instance such an interlocutory question, it should recommend to the District Court that the Motion similarly be denied.

Respectfully submitted,


*/s/ Rashad Blossom*_____
Rashad Blossom (NC State Bar No. 45621)
Blossom Law PLLC
301 S. McDowell St., Suite 1103
Charlotte, NC 28204

Telephone: (704) 256-7766
Facsimile: (704) 486-5952
rblossom@blossomlaw.com
*Counsel for all Plaintiffs*

Theodore ("Thad") O. Bartholow III
(*Admitted Pro Hac Vice*)
Texas State Bar No. 24062602
Karen L. Kellett
Texas State Bar No. 11199520
KELLETT & BARTHOLOW PLLC
11300 N. Central Expressway, Suite 301
Dallas, Texas 75243
Telephone: (214) 696-9000
Facsimile: (214) 696-9001
thad@kblawtx.com
*Counsel for all Plaintiffs*

Thomas Domonoske, VSB #35434
(*Admitted Pro Hac Vice*)
Leonard A. Bennett, VSB #37523*
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Blvd., Ste. 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: tom@clalegal.com
*\*Pro Hac Vice motion forthcoming*
*Counsel for all Plaintiffs:*

Kristi Cahoon Kelly, VSB #72791
J. Patrick McNichol, VSB# 92699
KELLY GUZZO, PLC
3925 Chain Bridge Rd, Suite 202
Fairfax, Virginia 22030
Telephone: (703) 424-7572
Facsimile: (703) 591-9285
E-mail: kkelly@kellyguzzo.com
E-mail: pat@kellyguzzo.com

*Counsel for all Virginia Plaintiffs*
*Herman Bland, Sylvia Bland, Jacob Green, Emily Yeatts, Marc Vredenburg, Shon Jualin, Amber Jualin, Richard Monteria, Logan Schalk, Kim l. Larsen, Scott Larsen, Jason Schieber, Damien Sink, Heather Wilson Medlin, George w. Harris, III, Mohamed Abdalla, Reagan Atkins, Brian Baumgardner, Samantha Bowyer, Teresa Ciccone, Michael Craighead, James Crowder, Joshua Dickey, Robert Duncan, Michael Dunford, Dominic During, Glen Erwin, Anthony Fucci, Melissa Grube, Richard Harrell, Denise Henderson, Philip Joiner, Dumont Jones, Jeanette Jones, Kami Jordy, Marc Kennedy, Joshua Laplante, Stephanie Laplante, Carrie Lee, Howard Lohnes, Norma Lohnes, Elizabeth Mank, Wendy Minor, Joesil Moore, Debra Orr, Edwin Pinto - Castillo, Catherine Pistone, Rick Pistone, Jeffrey Preuss, Erin Ray, Wesley Richie, Tracey Richie, Kathy Roberson, Daniel Roberts, Pamela Seifert, Ashley Shelley, Kelly Tenorio, Lashanda Theodore, Wilson Theodore, Anthony Ward, Jerry Watson, Jesse Weaver, Kristen White, Nina Briggs, Margaret Fleshman, Angela Morris, John Morris, Carl Steinhart, Christian Stratton, Ashley Sustek, Matt Sustek*

Jeremy P. White, VSB #48917
Blue Ridge Consumer Law, PLLC
722 Commerce Street, Suite 215
Lynchburg, VA 24504
Telephone: (434) 201-6800
Email: jeremy@consumerlawva.com
*Counsel for Plaintiffs Nina Briggs, Margaret Fleshman,*
*Angela Morris, John Morris, Carl Steinhart, Christian Stratton,*
*Ashley Sustek, and Matt Sustek*

John T. O'Neal, NC State Bar # 23446
O'Neal Law Office
7 Battleground Court, Suite 101
Greensboro, NC 27408
P: 336.510.7904
F: 336.510.7965
E: john@oneallawoffice.com
*Counsel for Plaintiffs Silberio Reyes,*
*Steve Hollingshead, and Vicky Prasongphime*

Dale W. Pittman, VSB#15673
THE LAW OFFICE OF DALE W. PITTMAN, P.C.

The Eliza Spotswood House
112-A West Tabb Street
Petersburg, VA 23803
(804) 861-6000
(804) 861-3368 (Fax)
dale@pittmanlawoffice.com
*Counsel for Plaintiffs Herman Bland,*
*Sylvia Bland, Dustin Fontenot, Jacob Green, Amber Jualin,*
*Shon Jualin, Richard Monteria, Claude Mumpower,*
*Nirmal Sakthi, Marc Vredenburg and Emily Yeatts*

Michael C. Litman, VSB #92364
LITMAN PLLC
6802 Paragon Place, Suite 410
Richmond, VA 23230
(804) 723-6912
(804) 293-3973 (Fax)
mike@mlitman.com
*Counsel for Plaintiffs Heather Wilson Medlin*
*and Eric Medlin*

Emily Connor Kennedy, VSB# 83889
Mark C. Leffler, VSB# 40712
Boleman Law Firm, P.C.
2104 W. Laburnum Ave, Suite 201
Richmond, VA 23227
(804) 358-9900 – Telephone
(804) 358-8704 – Facsimile
Email: eckennedy@bolemanlaw.com
Email: mcleffler@bolemanlaw.com
*Counsel for Plaintiff George W. Harris, III*

James J. O'Keeffe (VSB no. 48620)
MichieHamlett PLLC
109 Norfolk Avenue, S.W., 2nd Floor
P.O. Box 2826 (24001)
Roanoke, VA  24011
540-491-0634
Fax: 434-951-7271
jokeeffe@michiehamlett.com

*Counsel for Kim and Scott Larsen, Damien Sink, Logan Schalk, and Jason Schieber*